**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**JUAN EDENILSON SOTO CAMPOS,**

**Petitioner,**

**v.** **Civil Action No. 3:26cv615**

**WARDEN, FARMVILLE DETENTION CENTER,**

**Respondent.**

**MEMORANDUM OPINION**

Juan Edenilson Soto Campos, a federal immigration detainee currently being held in the Farmville Detention Center ("Farmville"), proceeding *pro se*, submitted a 28 U.S.C. § 2241 Petition ("the § 2241 Petition," ECF No. 1).[1] Petitioner challenges his detention by Immigration and Customs Enforcement ("ICE"). Petitioner filed a Pro Se Motion to Expedite Consideration, to Shorten Respondent's Response Time, and for Limited Protective Relief Regarding Transfer ("Motion to Expedite," ECF No. 5),[2] accompanied by a declaration, memorandum, and exhibits

[1] The statute provides, in pertinent part:

(c) The writ of habeas corpus shall not extend to a prisoner unless—

> (1) He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or
>
> (2) He is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or
>
> (3) He is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2241(c)(1)–(3).

[2] In his Motion to Expedite, Petitioner requests that the Court shorten Respondent's response time to fourteen days after entry of an order granting Petitioner's Motion to Expedite.

(ECF Nos. 5-1, 6, 6-1, 6-2, 6-3, 6-4, 7). Respondent has filed an Opposition. (ECF No. 8.) Petitioner filed a Motion for Leave to File Reply Out of Time (ECF No. 9), which will be GRANTED. For the reasons set forth below, the § 2241 Petition will be DENIED.

## I. Factual and Procedural History

### A. Factual Background

Petitioner provides little information in his § 2241 Petition and the Court necessarily relies on a submission filed by Respondent, namely a sworn declaration ("Declaration," ECF No. 8-1).

"Petitioner is a 35-year-old native and citizen of El Salvador." (ECF No. 8-1 ¶ 5.) Petitioner has two children. (*See* ECF No. 1-1 ¶¶ 5, 9.) Petitioner was separated from one child in 2017 when he arrived at the United States border. (ECF No. 1-1 ¶¶ 5, 30–32.) That child is now sixteen years old and lives in El Salvador with his mother. (ECF No. 1-8, at 3.) "Petitioner is [also] the father of a United States citizen child and maintains strong family, employment, and community ties. Petitioner does not present a danger to the community and his continued detention imposes significant hardship on his family." (ECF No. 1, at 6.) According to Justin Richardson, the Acting Assistant Field Officer Director of ICE Enforcement and Removal Operations ("ERO"):

> 6. On August 15, 2014, Customs and Border Protection ("CBP") encountered Petitioner at or near Hidalgo, Texas. After a brief interview, CBP agents determined Petitioner had unlawfully entered the United States from Mexico without being admitted or paroled by an immigration officer. Petitioner was processed for Expedited Removal pursuant to 8 U.S.C. § 1225(b)(1). Petitioner was issued a Form I-860, Notice and Order of Expedited Removal, and taken into civil immigration custody.

---

(ECF No. 5, at 1.) Even if the Court had issued an order on the same day that the Motion to Expedite was received, Respondent's response would have been due only four days sooner.

> 7. On August 25, 2014, Petitioner claimed fear of return to El Salvador. Petitioner was referred to U.S. Citizenship and Immigration Services ("USCIS") for a credible fear interview.
>
> 8. On October 1, 2014, USCIS determined Petitioner did not have a credible fear of persecution or torture. Petitioner requested review before an Immigration Judge.
>
> 9. On October 16, 2015, the Immigration Judge affirmed the negative fear determination.
>
> 10. On November 5, 2014, Petitioner was removed from the United States to El Salvador.
>
> 11. On December 3, 2014, [CBP] encountered Petitioner at or near Falfurrias, Texas. After a brief interview, CBP agents determined Petitioner had unlawfully entered the United States from Mexico without being admitted or paroled by an immigration officer. Petitioner was served a Form I-871, Reinstatement of Prior Order, Form I-294, Warning to Alien Ordered Removed or Deported, and Form I-205, Warrant of Removal/Deportation.
>
> 12. On March 17, 2015, Petitioner was removed from the United States to El Salvador.

(ECF No. 8-1 ¶¶ 6–12.) According to Petitioner: "In 2017, Petitioner entered the United States together with his minor son . . . . Upon arrival at the United States border, Petitioner and his son were separated by immigration authorities. Petitioner was placed in immigration custody while his son was transferred to a shelter for minors." (ECF No. 1-1 ¶¶ 30–32.) Mr. Richardson further explains that:

> 13. On August 9, 2017, [CBP] encountered Petitioner at or near Hidalgo, Texas. After a brief interview, CBP agents determined Petitioner had unlawfully entered the United States from Mexico without being admitted or paroled by an immigration officer. Petitioner was served a Form I-871, Reinstatement of Prior Order, Form I-294, Warning to Alien Ordered Removed or Deported, and Form I-205, Warrant of Removal/Deportation. Petitioner claimed fear of return to El Salvador and was referred to USCIS for a reasonable fear interview.
>
> 14. On September 12, 2017, an asylum officer determined Petitioner ha[d] a reasonable fear of persecution or torture. Petitioner was served with Form I-863, Notice of Referral to Immigration Judge, initiating Withholding Only proceedings.
>
> 15. On September 18, 2017, Petitioner filed Form I-589, Application for Asylum and for Withholding of Removal.
>
> 16. On December 11, 2017, Petitioner appeared for an individual hearing before an Immigration Judge in Los Fresnos, Texas. After hearing the merits of his application for protection, the Immigration Judge denied the application. Both parties waived appeal.

> 17. On January 11, 2018, Petitioner was removed from the United States to El Salvador.

(ECF No. 8-1 ¶¶ 13–17.) According to Petitioner, he "returned to the United States in December 2022." (ECF No. 1-1 ¶ 49.)

"In order to pursue reunification with his son, . . . Petitioner submitted" the required application "in late December 2024." (ECF No. 1-1 ¶¶ 43–44.) "[USCIS] confirmed receipt of the application on January 3, 2025" and, "Petitioner and his family continued to respond to requests and inquiries related to the reunification process." (ECF No. 1-1 ¶¶ 45–46.) Mr. Richardson explains that:

> 19. On January 3, 2025, Petitioner filed Form I-131, Application for Travel Documents, Parole Documents, and Arrival Departure Records with USCIS based on his class membership in the Ms. L. Settlement Agreement, *Ms. L. v. U.S. Immigration & Customs Enforcement*, No. 3:18-cv-00428 (S.D. Cal.).
>
> 20. On February 18, 2026, USCIS issued a notice of intent to deny the Form I-131. Petitioner was given until March 23, 2026, to respond.
>
> 21. On March 18, 2026, Petitioner filed a response to the notice of intent to deny.
>
> 22. On May 13, 2026, ERO encountered Petitioner during a targeted enforcement operation in Aspen Hill, Maryland. ERO identified Petitioner as self-admitted MS-13 gang member. After establishing his identity and immigration history, ERO took Petitioner into civil immigration custody. Petitioner was served with Form I-200, Warrant for Arrest of Alien, Form I-205, Warrant of Removal, Form I-294 Warning to Alien Ordered Removed or Deported, and Form I-229a, Warning for Failure to Depart.
>
> 23. Petitioner is subject to a stay of removal based on the June 27, 2025, the U.S. District Court for the Southern District of California order in *Ms. L. v. ICE*, N. 18-428 (S.D. Cal.).

(ECF No. 8-1 ¶¶ 6–23.) According to Petitioner, "On September 21, 2026, USCIS issued a Parole in Place Denial Notice under the Ms. L Settlement / Family Reunification Task Force process." (ECF No. 9-1, at 6–7.)

### B. <u>Procedural Background</u>

On July 1, 2026, the Court received the § 2241 Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) In his § 2241 Petition, Petitioner states that he was

taken into immigration custody on May 13, 2026. (ECF No. 1, at 4.) Petitioner asks the Court "to order his immediate release or, in the alterative, order an individualized custody review consistent with due process and the extraordinary family reunification [] circumstances presented in this case." (ECF No. 1, at 7.)

On July 15, 2026, the Court ordered Respondent to file a responsive pleading within sixty (60) days. (ECF No. 4, at 1.) On September 14, 2026, Respondent filed an Opposition arguing that Petitioner is subject to a reinstated final order of removal and is mandatorily detained under 8 U.S.C. § 1231, and the § 2241 Petition should be denied. (ECF No. 8, at 3, 11.)

In his Reply (ECF No. 9-1), Petitioner raises several arguments unrelated to the material issues before this Court. Essentially, Petitioner asserts that factual assertions made in Respondent's Opposition do not apply to Petitioner and instead apply to a different petitioner in a separate case. (ECF No. 9-1, at 1–2.) Although Petitioner's arguments are not material to the outcome of this action, the Court feels compelled to acknowledge errors in the record submitted by Respondent.

Petitioner identified at least three errors in the record before the Court. First, Petitioner asserts that a sentence in Respondent's Opposition and the associated citations are not about him.[3] (*See* ECF No. 9-1, at 1–2.) Second, Petitioner correctly points out that the sentence and

---

[3] The sentence and citations are: "Finally, and particularly salient here, Petitioner poses both a danger to the community and a flight risk. *See* Ex. 1, ¶ 22; ¶ 7 (conviction for trafficking opium or heroin resulting in sentence of between 225 and 279 months); and ¶¶ 23–26 (refusal to cooperate in removal efforts)." (ECF No. 8, at 10.) When the Court looks to the Declaration that accompanies the Opposition, Petitioner is correct that these cites do not match the description provided in the Opposition.

Paragraph 7 of Exhibit 1, Respondent's Declaration, states:

> On August 25, 2014, Petitioner claimed fear of return to El Salvador. Petitioner was referred to U.S. Citizenship and Immigration Services ("USCIS") for a credible fear interview. (ECF No. 8-1 ¶ 7.)

associated citations are from an opposition in a separate case and were mistakenly included in the instant Opposition.[4] (*See* ECF No. 9-1, at 1–2.) Third and finally, Petitioner refutes paragraph 22 of Respondent's Declaration, which states that Petitioner self-identified as a member of MS-13.[5] (ECF No. 9-1, at 2.)

---

Paragraphs 23 and 24 state:

> Petitioner is subject to a stay of removal based on the June 27, 2025, the U.S. District Court for the Southern District of California order in *Ms. L. v. ICE*, No. 18-428 (S.D. Cal.).
>
> As of the execution of this declaration, Petitioner's Form I-131 remains pending before USCIS.

(ECF No. 8-1 ¶¶ 23–24.)

The Declaration ends at paragraph 24 and does not have paragraphs 25 and 26. Petitioner is correct that paragraphs 7, 23, and 24 do not support Respondent's argument in the Opposition.

[4] In the opposition filed in *Rashidi v. Crawford*, No. 3:26-cv-131 (RCY) (E.D. Va.), the respondents argued: "Finally, and particularly salient here, Petitioner poses both a danger to the community and a flight risk. *See* Ex. 1, ¶ 22; ¶ 7 (conviction for trafficking opium or heroin resulting in sentence of between 225 and 279 months); and ¶¶ 23–26 (refusal to cooperate in removal efforts)." No. 3:26-cv-131 (RCY), ECF No. 15, at 15. This is the exact sentence mistakenly included in the Opposition in this case. The Court recognizes the error, agrees that this information does not apply to Petitioner, but instead applied to Rashidi, and reminds Respondent of their obligation to file submissions that contain correct information.

[5] Specifically, the Declaration provides:

> On May 13, 2026, ERO encountered Petitioner during a targeted enforcement operation in Aspen Hill, Maryland. ERO identified Petitioner as self-admitted MS-13 gang member. After establishing his identity and immigration history, ERO took Petitioner into civil immigration custody. Petitioner was served with Form I-200, Warrant for Arrest of Alien, Form I-205, Warrant of Removal, Form I-294 Warning to Alien Ordered Removed or Deported, and Form I-229a, Warning for Failure to Depart.

(ECF No. 8-1 ¶ 22.)

In his Reply, "Petitioner denies under penalty of perjury that he is or has been a member or affiliate of MS-13 and denies that he admitted such membership to U.S. immigration officers." (ECF No. 9-1, at 2.) The Court recognizes on the record that Petitioner disputes this

The Court finds these substantive errors disturbingly egregious. Misstating Petitioner's history and background in such a detailed manner risks infecting his government-kept files going forward. To eliminate the incorrect public record, the Court will order Respondents to file a Notice on the record of the incorrect statements in its Opposition and to refile its Opposition without the incorrect information.

## II. Standard of Review

### A. Habeas Petitions

28 U.S.C. § 2241(a) provides that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." *Id.* "A federal court may grant habeas relief only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States." *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (internal citations and brackets omitted); *see also Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). After receiving the petition and any response thereto, "[t]he court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

### B. Detention Under 8 U.S.C. § 1231 and *Zadvydas*

8 U.S.C. § 1231[6] governs the detention and removal of aliens subject to final orders of removal. Under § 1231, upon the issuance of a final order of removal to an alien, the alien shall

---

fact. Unfortunately, Petitioner must pursue the correction of his immigration record before the Immigration Court.

[6] 8 U.S.C. § 1231 provides, in pertinent part:

(a) Detention, release, and removal of aliens ordered removed
(1) Removal period
(A) In general
Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United

be removed "within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). The alien "*shall*" be detained during the removal period. *Id.* § 1231(a)(2)(A) (emphasis added). An alien not removed during the 90-day removal period may be released or detained. Under 8 U.S.C. § 1231(a)(3), aliens who do not leave the United States or are not removed during the removal period "*shall* be subject to supervision" pending their removal. 8 U.S.C. § 1231(a)(3) (emphasis added). But § 1231(a)(6) provides allowance for the continued detention of an alien after the removal period.

Section 1231 "does not specify a time limit on how long DHS may detain an alien in the post-removal period." *Castaneda v. Perry*, 95 F.4th 750, 755–56 (4th Cir. 2024). But the United States Supreme Court addressed this issue in *Zadvydas v. Davis*, 533 U.S. 678 (2001). In *Zadvydas*, the Supreme Court considered whether § 1231(a)(6) authorizes the indefinite detention of an alien subject to a removal order, or whether the statute permits detention only for a period reasonably necessary to secure the alien's removal. *Zadvydas*, 533 U.S. at 692. Recognizing the "serious constitutional problem arising out of a statute that . . . permits an indefinite, perhaps permanent, deprivation of human liberty," *id.*, the *Zadvydas* Court "construe[d] [§ 1231] to contain an implicit 'reasonable time' limitation.'" *Id.* at 682. This period, the Supreme Court determined, is presumptively six months. *Id.* at 701.

---

> States within a period of 90 days (in this section referred to as the "removal period")
>
> * * *
>
> (2) Detention
>
> (A) In general
>
> During the removal period, the Attorney General shall detain the alien[.]

8 U.S.C. § 1231(a)(1)–(2).

The six-month presumption "does not mean that every alien not removed must be released after six months." *Id.* But if an alien is detained beyond six months, the presumption of reasonableness no longer exists. At that point, if the alien makes a *prima facie* showing "'that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing' or release the alien." *Castaneda*, 95 F.4th at 756 (quoting *Zadvydas*, 533 U.S. at 701); *see also Menghua Wan v. Crawford*, No. 1:13-cv-1473 (JCC), 2014 WL 970180, at *3 (E.D. Va. Mar. 12, 2014) (explaining the burden-shifting test established in *Zadvydas* to assess the constitutionality of detention following the presumptively reasonable six-month period).

## III. Analysis

Here, Petitioner has been detained on the final order of removal only since May 13, 2026, which is five months, and less than the presumptively reasonable six-month period. *See Zadvydas*, 533 U.S. at 701. Therefore, the Court will deny the § 2241 Petition. However, Petitioner may refile a habeas petition with this Court in the future if his detention continues.

## IV. Conclusion

Accordingly, Petitioner's § 2241 Petition (ECF No. 1) will be DENIED WITHOUT PREJUDICE. The Motion to Expedite (ECF No. 5) will be DENIED. The Motion for Leave to File Reply Out of Time (ECF No. 9) will be GRANTED.

An appropriate Order shall accompany this Memorandum Opinion.

/s/ MHL
M. Hannah Lauck
Chief United States District Judge

Date: 11/2/26
Richmond, Virginia